Julius Bascom McBRIDE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15370.

United States Court of Appeals
Fifth Circuit.

Aug. 9, 1955.

Rehearing Denied Sept. 17, 1955.

Bernard A. Golding, Houston, Tex., for appellant.

Malcolm R. Wilkey, U. S. Atty., and John C. Snodgrass, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and WRIGHT, District Judge.

JONES, Circuit Judge.

The appellant, Julius Bascom McBride, had been practicing osteopathy in Houston, Texas, for nearly twenty years. Among his patients and friends was L. D. Morrison, who was Chief of Police in Houston during the occurrence of the happenings out of which this appeal arose. Morrison was thrown into an automobile in the latter part of 1951 and this incident or other cause resulted in a back injury, diagnosed as a ruptured in-

tervertebral disc, attended by severe pain. In January, 1952, he consulted Dr. J. T. Billups, a surgeon, who sent him to a hospital where he was given traction treatment. While in the hospital he was given narcotics of one kind or another, including codeine combined with other drugs for relieving pain. Surgery was discussed but Morrison would not agree to it.

Soon after being discharged from the hospital, Morrison went to appellant who sent him to another osteopath for X-ray treatments, from which he had a reaction. For the relief of the condition created by the X-ray the appellant used nembutal and pantopon, neither of which was entirely satisfactory. The appellant then tried codeine. The effect of the initial use of this drug was described by the appellant in these words: "the next morning everything was lovely. Oh, everything was lovely, and so the next day, I thought, 'Boy, we better do that again' * * *." The appellant then began prescribing codeine in combination with other drugs, later changing to direct dispensing from appellant's office of "codeine straight", as it was described by him.

During 1953, 215 grains of codeine by prescription and 671 grains, or more, by direct dispensation were received by Morrison from appellant. During the first four and a half months of 1954 appellant dispensed directly to Morrison not less than 800 grains of codeine, some of which was delivered a hundred grains at a time. In appellant's narcotic record book, which appellant was required to keep, the name of Morrison was erased and the name of Billy Jackson, an incurable cancer patient of appellant, was substituted. The appellant's reason for so doing as given to the Federal Narcotics Agents was that Morrison had objected to his name being inserted in the record. At the trial appellant thought perhaps Morrison had not expressed an objection but he had ascertained Morrison's objections by reading his mind. Upon being confronted by the Narcotics Agents with these entries, which appellant's counsel at the trial admitted were false, the appellant readily admitted the name Billy Jackson was used in lieu of Morrison's name to show the destination of the drug dispensed. He then and at the trial contended the Billy Jackson entries were merely a code "like John Doe". He testified that when one of the agents "asked me for my narcotic record, my books, I knew I had better explain it to him immediately because, well, like I say, I knew my wife had fussed at me about handling these people, and I thought I had better say it ahead of time, because I knew it was a hell of a mess * * *".

The appellant and his wife were both constantly concerned about the dispensing of such large quantities of a narcotic to Morrison. He frequently expressed to Morrison his fears that his patient was or was becoming an addict, and on various occasions he attempted to get Morrison to discontinue the use of codeine. Appellant's wife urged him to stop dispensing the drug to Morrison. The appellant attempted to justify his conduct to himself by the belief, or perhaps hope, that the dispensing of narcotics when accompanied by treatment was not illegal. He therefore gave Morrison an osteopathic treatment upon each occasion of dispensing codeine and followed the same procedure with others.

The appellant was indicted in twenty-six counts, odd numbered counts 1, 3, 5, 7, and 9 charging false and fraudulent entries in the appellant's record of dispensation of narcotics, under 18 U.S.C.A. § 1001, counts 11, 13, 15 and 17 charging the false making, altering, forging and counterfeiting of the narcotics records, under 18 U.S.C.A. § 494, counts 19, 21, 23 and 25 charging false and fraudulent execution of entries in the narcotics record, a document required by the Internal Revenue Laws and Regulations, under 26 U.S.C.A. § 3793, and the even numbered counts charging that appellant sold, dispensed and distributed narcotics not in the course of professional practice, not for legitimate medical purposes, and not in good faith, under the Harrison Act, 26 U.S.C.A. §§ 2550, 2554. Prior to the

trial, the appellant filed (1) a motion to dismiss the indictment upon the ground, among others, that the indictment was based upon the testimony, unwillingly given, of appellant's wife, (2) a motion for a bill of particulars, (3) a motion to inspect the Grand Jury minutes, and (4) a motion for the return of and suppression as evidence of seized property. The motion to inspect was granted. The other motions were denied. Application was made to transfer the case from the Houston Division because of the publicity the case had received. The cause was transferred to and the trial held in Corpus Christi. At the close of the testimony, a motion was made by appellant for a directed verdict. The motion was denied. The jury returned a verdict of guilty on all counts. A motion for a new trial was denied.

The appellant urges before this Court, at the outset, that the indictment is defective. The appellant's wife appeared before a Grand Jury which indicted appellant. This indictment was dismissed. A subsequent Grand Jury returned the indictment upon which appellant was tried. Appellant says in his brief that although appellant's wife did not appear before the second Grand Jury, it used the minutes of the prior Grand Jury in which her testimony appeared. There is nothing before us that shows that the testimony of appellant's wife before the first Grand Jury was transcribed or that the second Grand Jury had any access to or knowledge of her testimony. Counsel who presented the case to the Grand Jury for the Government and who tried the case in the District Court deny that the minutes of the former Grand Jury were in any way used by or before the body which returned the indictment. We need not consider the effect of something which is not shown to have occurred.

The appellant contends that he was not required to keep records of the narcotics dispensed to Chief Morrison, that if required to keep records he was justified in believing otherwise and in acting on his belief, that the records as kept by him fulfilled the statutory requirements, that the codeine given was dispensed in the course of the legitimate practice of his profession, that the Court's charge was erroneous and prejudicial, and finally, that the Judge, by remark and comment, created an unjudicial atmosphere in the courtroom.

The Harrison Act levies a tax upon the importation and sale of designated narcotics and narcotic compounds and derivatives. 26 U.S.C.A. § 2550. Codeine is included. It is provided that:

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary."

"Nothing contained in this section * * * shall apply—

"To the dispensing or distribution of narcotic drugs to a patient by a physician, dentist, veterinary surgeon, or other practitioner, registered under section 3221, in the course of his professional practice only: Provided, That such physician, dentist, veterinary surgeon, or other practitioner, shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist, veterinary surgeon, or other practitioner, shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in section 2556.

"To the sale, dispensing, or distribution of narcotic drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician, dentist, veterinary surgeon, or other practitioner, * * *." 26 U.S.C.A. § 2554.

Violations are criminal offenses and penalties are provided. 26 U.S.C.A. § 2557, 18 U.S.C.A. § 1001.

■ Because the appellant gave to Morrison an osteopathic treatment on each occasion when codeine was dispensed, it is urged that the drug was given "to a patient upon whom such * * * practitioner shall personally attend", and being so given the record was not required. We need not risk restricting the meaning of the phrase "personally attend" by a definition. It is enough to say that the evidence justified the findings by the jury as an incident to its verdict of guilty that the statutory exception from record keeping did not apply to the giving by the appellant of codeine in quantities exceeding the amounts approved by any of the medical witnesses and regarded by most as greater than justified by standard medical practice. The appellant was asked if it was his understanding that he had a legal right to dispense. He testified that Police Chief Morrison had brought him a book on narcotics "and it says plainly there 'when personally—when you are in personal attendance or personally administered by the doctor, you don't even have to keep a record of it.' It says very plainly." That which appellant would have us say was an honest misunderstanding obviating criminal intent might well be regarded as subterfuge and evasion.

That the records kept were not in compliance with the statute seems so obvious as not to call for comment. The desire of Chief Morrison to have his name erased from a narcotics record does not justify the substitution of the name of Billy Jackson, an incurable cancer patient, as the person receiving the narcotics which were dispensed to Morrison. Particularly is this true when the appellant had so much concern as to whether Morrison was becoming or could become an addict as appears from the testimony. The code, so called, was merely the appellant's record of office calls and payments. It is unconvincing as a means of determining the quantity of codeine dispensed to either Morrison or Jackson. The prompt admission of the falsity of the record to the Narcotics Agents was more likely induced by the appellant's realization, as he put it, that "I had better say it ahead of time, because I knew it was a hell of a mess * * *" rather than by the guileless explanation of one innocent of wrongful thought or deed. The entries made by or at the direction of appellant in the record which he was required to keep and which he knew he was required to keep were false and known by him to be false. Such falsification of the record, deliberately made, is an offense of which appellant was charged under the odd numbered counts of the indictment and for which he has been adjudged guilty.

It has already been noted that none of the professional witnesses, four of whom were called by the Government, one of these being an osteopath, and two called by the defendant, would say that the dispensing of codeine in the quantities given by the appellant to his friend and patient Morrison was standard medical practice. Evidence of the failure to follow standard medical practices shows a lack of good faith. So also, as bearing on good faith is the evidence of appellant's unorthodox attitude toward narcotics and addiction.

Without detailing this evidence we mention as examples excerpts from appellant's testimony:

"You can take morphine, you can take codeine, you can take anything at all without being an addict. Just because you drink whiskey is no sign you are a drunkard, and about the only people who become addicts are weaklings."

Also, quoting Morrison,

" * * * and so he says, 'Gosh', says, 'you know I don't like for people to know—if people knew I was taking this codeine, they would think I wasn't able to hold this job,' and I said, 'Gosh, that's what makes you good. If you didn't have the stuff, you couldn't hold your job.'"

And

"I took pantopon every day, two or three times a day, for six weeks to two months, and, boy, I love that stuff, boy, it's heaven, pantopon is heaven, it's wonderful, but I tell you what, I wouldn't take that stuff because I'm scared of it. * * *"

The appellant contends that the charge of the Court as to standard medical practices and good faith injects elements of the offense which are not within the statute. This instruction of the Court was:

"If dispensations were made in good faith and according to standard medical practices in the cure of disease or injury, and not merely to satisfy the craving of a person for such drug, then the dispensations may be said to have been made in the regular course of the defendant's professional practice only; but if the dispensations were not made in good faith, but were made to enable such person to obtain codeine sulphate to satisfy his appetite or craving for such drug only and not in the treatment of his patient, then the dispensation of such drug would not be in good faith nor in the regular course of the defendant's professional practice as a physician, nor for legitimate medicinal purposes, and such sale and dispensing would not be lawful."

The foregoing portion of the Court's charge is almost identical with a portion of an instruction approved in Du Vall v. United States, 9 Cir., 1936, 82 F.2d 382, certiorari denied 298 U.S. 667, 56 S.Ct. 751, 80 L.Ed. 1391. The instruction above quoted accurately states the law of this aspect of the case as announced by the Supreme Court. Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; Boyd v. United States, 271 U.S. 104, 46 S.Ct. 442, 70 L. Ed. 857. The belief of appellant that the codeine dispensed was beneficial to Chief Morrison in "making him good" and "holding his job", if such belief was sincerely held, does not establish good faith nor alter criteria of standard medical practices.

The trial judge, in the instructions to the jury, made reference to the words "knowingly and willfully" as used in 18 U.S.C.A. § 1001, and in the counts numbered 1, 3, 5, 7, and 9, of the indictment charging false and fraudulent record entries, saying:

" * * * and the word knowingly means with knowledge—and wilfully—and wilfulness is an element of the offense charged and is necessary for the Government to prove beyond a reasonable doubt that the defendant wilfully and knowingly made a false record or entry; to prove this element it is not necessary that the Government prove that the Defendant in fact had an evil intent. The word wilful means no more than that the forbidden act is done deliberately and with knowledge."

The appellant, claiming that evil intent was necessary, cites an opinion of the late Justice Roberts as follows:

"The word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose [citing cases]; without justifiable excuse [citing cases]; stubbornly, obstinately, perversely [citing cases]. The word is also employed to characterize a thing done without ground for believing it is lawful [citing cases], or conduct marked by careless disregard whether or not one has the right so to act [citing cases]." United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 225, 78 L.Ed. 381.

Appellant also reminds us of that which Chief Judge Hutcheson observed, in an opinion reversing a judgment of conviction for willful tax evasion:

"The court here fell into the error of not distinguishing between the

elements of an offense, where the statute simply denounces the doing of an act as criminal, and where it denounces as criminal only its willful doing. * * * In the second class of cases, a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence." Hargrove v. United States, 5 Cir., 1933, 67 F.2d 820, 823, 90 A.L.R. 1276.

The appellant also calls attention to the following recent statement of this Court speaking through Judge Rives:

"It is now settled that 'willfully' * * * means more than intentionally or voluntarily, and includes an evil motive or bad purpose, so that evidence of an actual bona fide misconception of the law, such as would negative knowledge of the existence of the obligation, would, if believed by the jury, justify a verdict for the defendant." Wardlaw v. United States, 5 Cir., 1953, 203 F.2d 884, 885.

It is to be noted that in the Murdock case, supra, the Supreme Court said that in arriving at the meaning of the word "willfully" aid must be afforded by the context. 290 U.S. 389, 395, 54 S.Ct. 223, 78 L.Ed. 381. In the Hargrove case it is pointed out that "willfulness" is largely a matter of intent which arises when someone willfully or intentionally does that which is unlawful. 67 F.2d 820, 823. In the Wardlaw case it is to be emphasized that the definition of "willfully" as there used was restricted by the words "as used in this offense", which words follow "willfully" in the first line of the language quoted and were deleted from appellant's quotation of the definition in his brief. 203 F.2d 884, 885.

We think Judge Learned Hand spoke well when he said:

"The word 'willful,' even in criminal statutes, means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." American Surety Co. v. Sullivan, 2 Cir., 1925, 7 F.2d 605, 606.

"The meaning of the word [willful]", says the Court of Appeals for the District of Columbia, "depends in large measure upon the nature of the criminal act and the facts of the particular case. It is only in very few criminal cases that 'willful' means 'done with a bad purpose'". Townsend v. United States, 1938, 68 App.D.C. 223, 95 F.2d 352, 358; Fields v. United States, D.C.1947, 164 F.2d 97, 100.

The Murdock case, the Hargrove case, and the Wardlaw case, cited supra, involved willful income tax evasion and the definition of "willful" stated in those cases may be followed and applied in like cases. It is not applicable in a case such as we here consider. That the Murdock case is not of universal application appears from Browder v. United States, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862, where it was said:

"Read in its context the phrase 'willfully and knowingly,' as the trial court charged the jury, can be taken only as meaning 'deliberately and with knowledge and not something which is merely careless or negligent or inadvertent'." 312 U.S. 335, 341, 61 S.Ct. 599, 603.

We are not without precedent for the meaning of "willfully" as used in the statute before us, 18 U.S.C.A. § 1001, as applied to the falsification of narcotic records. In a recent Tenth Circuit case the same point was raised and was thus disposed of:

"Wilfulness is an element of the offense charged and it was necessary for the Government to prove beyond a reasonable doubt that appellant wilfully and knowingly gave a false and erroneous address. To prove this element, it was not necessary, however, as contended by appellant, that the Government prove that she had in fact an evil intent.

In some penal statutes the word 'wilful' connotes moral turpitude or evil of mind, but in others it means no more than that the interdicted act is done deliberately and with knowledge. We think that clearly is the sense in which the term is used in the statute under which the charges in the three counts of the indictment are laid." Walker v. United States, 10 Cir., 1951, 192 F.2d 47, 49. See also Mitchell v. United States, 10 Cir., 1944, 143 F.2d 953; United States v. Tommasello, 2 Cir., 1947, 160 F.2d 348.

 The Court properly instructed the jury as to the meaning of "willfully".

 In the Court's instruction on counts 19, 21, 23 and 25 which charged violations of 26 U.S.C.A. § 3793, it was said:

"One Julius Bascom McBride * * * did unlawfully, knowingly and *feloniously—feloniously* means with evil intent * * *." [Emphasis supplied.]

The word "feloniously" does not appear either in the statute or the indictment. The Court's interjection did no more than impose an additional burden upon the Government and the appellant was not prejudiced. The appellant made no objection to that portion of the instructions and cannot be heard to raise it now. Fed.Rules Crim.Proc., Rule 30, 18 U.S. C.A.

 The appellant tells us that the trial judge was inconsiderate of appellant's emotional state at the trial and created an unjudicial atmosphere in the courtroom. A careful examination of the record as a whole does not support the charge.

 In appellant's reply brief he asserts the belief that the Harrison Narcotic Act requires new judicial interpretations to make it conform to constitutional requirements. The Act has many times been upheld against attacks on constitutional grounds. There is no need to extend this opinion by a citation of authorities supporting the constitutionality of the Act. The early and leading cases are discussed in the A.L.R. annotation to Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229.

Other matters which appellant has urged and argued in his brief have not been overlooked, but are without substance or merit and require no comment on our part.

The judgment is affirmed.