**Harry NEEDELMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17022.**

United States Court of Appeals Fifth Circuit.

Nov. 14, 1958.

On Petition for Rehearing Jan. 5, 1959.

Ernest E. Roberts, Miami, Fla., for appellant.

O. B. Cline, Jr., Asst. U. S. Atty., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

The appellant, a physician, and Walter Waxman, a druggist, were first tried on an indictment for conspiracy to violate Title 26 United States Code Section 4705 (a), that is, to sell certain narcotic drugs, to wit, codeine, methadon, and demerol, not in pursuance of the required written orders. The result was a mistrial.

Subsequently, another indictment containing fifteen counts was returned against the appellant alone, charging him with substantive violations of the same Section. The first five counts named Gerald Miller, the next five counts named Fidele Garcia, and the last five counts named Alice Buonaiuto as the persons to whom methadon was sold or caused to be sold. Except for the names of such persons and the dates of sale, all fifteen counts were identical.

Without objection, the two cases were consolidated for trial. At the conclusion of the Government's evidence, the court granted a motion for judgment of acquittal of both defendants on the conspiracy charged, but denied Dr. Needelman's like motion on the substantive counts. The court then sustained Dr. Needelman's motion to strike all of the testimony of conversations had between the narcotic agent and Waxman outside the presence of Dr. Needelman and directed the jury to disregard any such testimony. The Government offered no additional evidence, but Dr. Needelman introduced a number of witnesses and testified in his own behalf.

At the conclusion of all the evidence, Dr. Needelman again moved for judgment of acquittal. The court denied the motion, stating in the jury's absence from the courtroom, "I think this is a very slender case, offhand, but I think there is enough to go to the jury."

The jury returned a verdict of guilty as to each of the fifteen counts. The court thereafter granted a motion for new trial as to the last five counts which

named Alice Buonaiuto as the purchaser; and those counts, upon motion of the Government, were dismissed by the court. The court fined the appellant a total of $5,000.00 and placed him on probation for three years.[1]

After the mistrial on the conspiracy charge, but prior to the time of the consolidated trial, the appellant moved the court:

"* * * for an Order permitting them to inspect the books, papers, documents, memoranda and objects and particularly the contemporaneous notes made by the Government witness, Kenneth Rudd, who has previously testified in said cause and who is a material witness for the Government in said cause, made by the said Kenneth Rudd during his investigation and preparation for trial of said cause, and which said contemporaneous notes have already been referred to by the said Rudd in the previous trial of said cause, and by which testimony it was shown that said contemporaneous notes prepared by the said Rudd were of the events, activities related to his said testimony, and that the inspection and copying of said contemporaneous notes made by the said Rudd are material and necessary for the defendants to prepare their defense."

The motion was denied. Again, after the narcotic agent Rudd had testified on direct examination on the second trial, had been cross-examined by appellant's counsel, and was on redirect examination by the Government, a short recess was had, the jury retired from the courtroom, and, we assume in response to a renewal of the motion, the court ruled: "I will deny the request for the notes, because they may involve many things. You may see the case report."

The questions presented for decision on appeal are whether the court erred in denying the defendant's motion for judgment of acquittal, and whether the court erred in denying the defendant's motion to be allowed to inspect the contemporaneous notes made by narcotic agent Rudd.

The issue of guilt or innocence was primarily that of good faith, that is, whether in good faith the narcotic drugs were dispensed by the defendant as a physician to his patients "in the course of his professional practice only." [2] The theory of the Government's case was that

1. At the time of sentencing, the Judge stated:

"The Medical Association may or may not deprive him of his license. I hope they don't. I hope they think he should not be deprived of his license because undoubtedly he is a skilful Doctor. I don't know. I am not going to go back on the jury's verdict, but I personally feel that he was exceedingly careless in any event, and it is possible that the jury felt that way and found him guilty for that reason. I don't know. They shouldn't have on that basis, but being human beings they might have done so."

2. 26 U.S.C.A. § 4705(c). The applicable subsections read:

"(a) *General requirement.*—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate.

\* \* \* \* \*

"(c) *Other exceptions.*—Nothing contained in this section, section 4735, or section 4774 shall apply—

"(1) *Use of drugs in professional practice.*—To the dispensing or distribution of narcotic drugs to a patient by a physician, dentist, veterinary surgeon, or other practitioner registered under section 4722, in the course of his professional practice only: *Provided,* That such physician, dentist, veterinary surgeon, or other practitioner shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist, veterinary surgeon, or other practitioner shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in section 4773."

the prescriptions to the three persons named in the indictment were not issued for the relief of pain but to keep narcotic addicts comfortable. In its oral charge to the jury, the court defined the issue as follows:

"Good faith is a matter for your determination, whether or not he did act in good faith; and good faith means that he has got to act in an honest endeavor to carry on his profession. Now, if he made a mistake or he was foolish or inept or something like that, that wouldn't be a breach of good faith; but if he sold drugs to an addict, a known man, having good reason to know a man or woman to be an addict, and sold only for the principal purpose of supplying the addict with these drugs that he craved, that would not, of course, be in good faith.

"So, as both attorneys have told you, the issue in this case is good faith. Did Dr. Needelman act in good faith in issuing these prescriptions?"

■ The appellant does not question the settled proposition of law that in order for a physician to come within the exception to the statute, 26 U.S.C.A. § 4705(c), note 2, supra, the narcotic drugs must have been dispensed or distributed to a patient or patients by the physician in good faith in the course of his professional practice only.[3]

■ In reviewing the denial of the motion for judgment of acquittal, the evidence must be considered in the light most favorable to the Government.[4] So considered, the jury could reasonably find the following facts. Dr. Needelman was to leave for Europe on August 6, 1955, for an extended vacation. He had known a Dr. Szekely, who had practiced medicine in New York for a considerable number of years, had taken the Florida Medical Board examination, and was awaiting his certificate to practice in Florida. Dr. Szekely came to Dr. Needelman's office about a week prior to Dr. Needelman's departure to become acquainted with Dr. Needelman's patients. Dr. Szekely's Florida certificate did not arrive by the time Dr. Needelman was to leave, so Dr. Needelman made arrangements with Dr. Grier, a licensed physician with a Government narcotic license, to take charge of the office until Dr. Szekely received his certificate. On August 20, two weeks after Dr. Needelman's departure, Dr. Szekely's license to practice medicine in Florida was issued. All of the questioned prescriptions were delivered to the patients after Dr. Needelman had left on his vacation, but peculiarly neither Dr. Szekely nor Dr. Grier was called as a witness.

It was stipulated that codeine, demerol, and methadon are narcotic drugs as defined in Title 26 United States Code Section 4731. Miss Sally Rossman testified that she was employed by Dr. Needelman from June 1955 through November 1955 doing laboratory work, assisting the Doctor and covering the front desk when needed. She identified thirty-one prescriptions which Dr. Needelman signed and left with her and Miss Fredericks, the other nurse in the office, with instructions that they were to be kept locked in a drawer of a desk, and when the patients whose names appeared on the prescriptions came in and paid a prescribed fee, varying from five to ten dollars, a prescription was to be delivered to the patient. At the time of delivery, she would fill in on the prescription that date as the date on which it was "to be filled." Those three words

3. See McBride v. United States, 5 Cir., 1955, 225 F.2d 249, 253, construing Section 2554 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 2554, which is substantially the same as Section 4705 of the 1954 Internal Revenue Code. See also Linder v. United States, 1925, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819.

4. Mortensen v. United States, 1944, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331; Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 13; Vick v. United States, 5 Cir., 1954, 216 F.2d 228.

were written by her at Dr. Needelman's direction prior to his departure. Among such patients were the three named in the indictment. Miss Rossman was extensively cross-examined in an effort to show that the prescriptions were delivered only at the direction of Dr. Szekely or Dr. Grier, and did waver somewhat in her testimony. The jury, however, could have reasonably believed that payment of the required fee was all that was necessary for a patient to receive a prescription for narcotic drugs signed by Dr. Needelman.

Miss Lillian Fredericks, the other nurse who had worked in Dr. Needelman's office, identified some twenty-nine additional prescriptions for narcotic drugs signed by Dr. Needelman and which bore her handwriting as to the dates on which they were to be filled. In general, her testimony was similar to that of Miss Rossman.

In addition, Dr. Needelman had left at the Medical Arts Pharmacy, of which Walter Waxman was proprietor, some seventy-five signed prescriptions for narcotic drugs, some to be delivered to Abe Bruches and some to his wife, Lottie Bruches. As each prescription was delivered, $2.50 would be collected and retained for Dr. Needelman, purportedly, however, to apply on an old bill owed by the Bruches to Dr. Needelman rather than for the prescriptions themselves.

Narcotic agents Rudd and Waters testified to examining the narcotic prescription file at the Medical Arts Pharmacy on September 22, 1955, just after Dr. Needelman's return from Europe, and to interviewing Dr. Needelman. Each testified that, after being warned and informed as to his rights not to give incriminating evidence against himself, Dr. Needelman talked freely, and stated that he knew the patients in question were narcotic addicts and that the $175.-00 left at the drug store by the Bruches was for prescriptions left there by Dr. Needelman at the rate of $2.50.

■ Dr. Needelman denied having made any such admissions, and testified and introduced evidence tending to show that the patients were suffering pain and that the prescriptions were signed and left by him in the course of his professional practice only. There was additional evidence on either side of the issue. Enough has been recited, however, to demonstrate that, considered in the light most favorable to the Government, there was sufficient relevant evidence from which the jury could reasonably have believed beyond a reasonable doubt that Dr. Needelman did not in good faith dispense or distribute the narcotic drugs to patients in the course of his professional practice only. The motion for judgment of acquittal was therefore properly denied.

■ Narcotic agent Rudd did not use his memoranda or notes to refresh his recollection while testifying, but admitted that he refreshed his recollection from them before testifying. Such memoranda or notes made contemporaneously by the witness for the purpose of refreshing his own recollection are not strictly within the rule of Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, or of the statute passed to meet that decision, 18 United States Code § 3500, which relate to formal written statements or reports made by the witness and signed or otherwise adopted or approved by him. Unlike such statements or reports, the mere memoranda or notes could not be directly introduced for impeachment purposes, but might be used as a basis for cross-examining the witness. The case of Goldman v. United States, 1942, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1332, holding that it is discretionary with the trial court to require or not to require a witness to produce memoranda or notes from which he had refreshed his recollection before taking the stand, was not overruled by Jencks, supra.[5] In our opinion, there was no abuse of discretion

5. See our recent opinion of Lambert v. United States, 5 Cir., 1958, 261 F.2d 799. See also, Jencks v. United States, 1957,

353 U.S. 657, at pages 668, 674, 680, 77 S.Ct. 1007, at pages 1013, 1016, 1019.

in denying permission to examine Rudd's memoranda or notes, but permitting appellant's counsel to see the case report.

Finding no reversible error in the record, the judgment is

Affirmed.

On Petition for Rehearing.

PER CURIAM.

Certiorari having recently been granted in several cases,[1] the decision of one or more of which may affect the disposition of this case, the parties may, if they see fit, show cause why the Court should not await the decision of one or more of said cases by the Supreme Court before ruling on the petition for rehearing.

1. Certiorari granted December 8, 1958, in the following: Lev v. United States, 79 S.Ct. 231; Wool v. United States, 79 S.Ct. 231; Rubin v. United States, 79 S.Ct. 231; Rosenberg v. United States, 79 S.Ct. 233; Ingram v. United States, 79 S.Ct. 234; Palermo v. United States, 79 S.Ct. 236. Certiorari granted December 15, 1958, in Pittsburgh Plate Glass Co. v. United States, 358 U.S. 917, 79 S.Ct. 289, 3 L.Ed.2d 237.