UNITED STATES of America,
Appellee,

v.

Larry Drake ATKINSON, Appellant.

UNITED STATES of America,
Appellee,

v.

Amos Manuel DUBOIS, Appellant.

Nos. 74–1648, 74–1646.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1974.

Decided March 11, 1975.

Joel A. Brenner, Mineola (Diller & Schmukler and Howard J. Diller, New York City, on brief), for appellant in No. 74–1648.

Roland C. Braswell, Goldsboro, N. C. (Court-appointed), for appellant in No. 74–1646.

Joseph W. Dean, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., and Jack B. Crawley, Jr., Asst. U. S. Atty., on brief), for appellee in Nos. 74–1646 and 74–1648.

Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Heroin was illegally possessed and distributed in Wilmington, North Carolina by Larry Drake Atkinson and Amos Manuel Dubois while acting together on July 16, 1973, and by Atkinson alone on July 17, according to their four-count indictment under the Comprehensive Drug Abuse Prevention and Control Act of 1970.[1] Atkinson was convicted of illegal possession and distribution of heroin on both days; Dubois was convicted only of possession on July 16. In their appeal, we discern no error requiring reversal.

The prosecution was built almost entirely upon evidence given by undercover informer Charles Pennington. It was enough to allow the jury to find the defendants' guilt beyond a reasonable doubt. From it the jury could have found the facts, and apparently did, as they are now recounted from Pennington's narration of them.

Working with the Wilmington police authorities, he kept surveillance, between mid-June and mid-July, of the home of a Jackie Hayes in Wilmington. At the instance of an undercover policeman, he called at her home at least three times before July 16, where among others he saw and met appellants Atkinson and Dubois.

Occasionally Atkinson sought to enlist Pennington in the sale of heroin. Accepting the suggestion, on July 16 with money furnished by the police, Pennington purchased from Atkinson at the Hayes residence a small quantity of heroin, saying he wanted to be assured of its quality. Dubois' participation on this day consisted of handing Pennington two glassine packages, each containing one gram of heroin.

After a short visit, Pennington withdrew, rejoined his police ally and turned his purchase over to him. A like visit was made on July 17 and he obtained another two glassine packages with a gram of heroin in each. The evidence does not put Dubois there at that time. These bags were also immediately given to Pennington's undercover companion, who in both instances was waiting elsewhere. All four packages with the heroin in them were passed on to the police department and, ultimately, to the official chemist who found the contents of each of the four packages to be heroin.

Initially the defendants suggest the unconstitutionality of the Act in its application here. The point is that no Federal authority existed for the punishment of a wholly intrastate possession

---

1. 21 U.S.C. §§ 801, 841(a)(1) (1970).

and distribution. The position is not tenable. Congressional findings on which the legislation rested disclosed that intrastate possession, distribution and sale of drugs such as heroin directly and injuriously effected the introduction of them into other States to the injury of the public health and welfare there. 21 U.S.C. §§ 801, 812. Thus the statutory definition and proscription of transactions of "controlled substances", 21 U.S.C. § 812(b), entirely within a State is altogether constitutional. United States v. Lopez, 459 F.2d 949 (5 Cir. 1972). *Cf.* White v. United States, 399 F.2d 813 (8 Cir. 1968).

A subsequent defense pressed by both Atkinson and Dubois is that the Government violated the Jencks Act, 18 U.S.C. § 3500, providing, as apt here:

> "(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

Recalling Pennington's evidence, it will be noted that the case's critical dates are July 16 and 17, the days on which the heroin was illicitly possessed or distributed. Detailed, Pennington's testimony is that he encountered Atkinson four times before July 16.

These instances were first, the latter part of June 1973 at the home of Jackie Hayes, where he went on a call from Cooper, her fiance. Atkinson came to the house during this time.

Next, a few days later while at the Hayes home, on the invitation of Cooper, Pennington was asked to give Cooper a ride to Goldsboro, North Carolina. He did so and took Cooper to a shopping plaza. He saw Atkinson sitting in his own car about 30 feet away. Cooper got out of Pennington's car and walked over to Atkinson's. He returned with a small paper bag, whereupon Pennington and Cooper drove back to Wilmington.

Afterwards, in early July in the Hayes home, he was introduced to Atkinson who encouraged him to engage in street distribution of heroin, pointing up probable profits. Later Pennington drove home and called his undercover police partner. He related the Atkinson conversation to him and arranged to meet him at the police headquarters the following day.

The fourth time Pennington saw Atkinson before July 16 was on July 15 at the Hayes home. This came about through preplanning with his informer companion, who was "working" that area of Wilmington. Pennington had made a purchase from Jackie Hayes' brother and from him had learned that Atkinson was then at the Hayes home. On going there he saw Jackie Hayes, Atkinson and Dubois. He had not seen Dubois for more than a year before, and then in wholly different circumstance and purpose.

Next day, Monday, July 16, after meeting his undercover operative at 10:30 a. m., Pennington went to the Hayes residence and made the earlier mentioned purchase of heroin in the two glassine packages. This act was repeated on July 17, also as previously described. Immediately after each of these six events Pennington wrote an account of his activity. These handwritten notes he gave to his wife or left them at home, except for those of July 16 and 17, which he delivered each day to his police partner for filing with the authorities. The others he had never shown to his partner nor to any of the police.

During cross-examination of Pennington his two accounts, memoranda or reports covering July 16 and 17 were produced by the Government and he was cross-examined from them. Defense counsel demanded production, under the Jencks Act, of the notes Pennington had made after each of the four earlier times

he had seen or been in contact with At-kinson.

Pennington declined to disclose the location of his home and wife because she was then under the protective custody of the Government. With her or at home Pennington placed the notes. *Cf.* United States v. D'Angiolillo, 340 F.2d 453, 457 (2 Cir. 1964), cert. denied 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965). The United States Attorney stated that he had never seen these reports and had never been aware of their existence. The Court sustained Pennington's position and pronounced the Government's failure to produce these writings to be free of error.

■ To begin with, none of the unproduced memoranda or reports qualified as a "statement" within the Jencks definition. *Cf.* Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). They were not made for use by the Government, but simply as personal notations of Pennington of "conversations that took place". These writings were not a detail of "drug purchases" such as those for July 16 and 17. Nor were they used by Pennington on the witness stand.

■ In Goldman v. United States, 316 U.S. 129, 132, 62 S.Ct. 993, 995, 86 L.Ed. 1322 (1942), the Court spoke to the point:

"We think it the better rule that where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them."

Though prior to the Jencks Act (enacted in 1957), *Goldman's* teaching has been constantly followed since the passage of this legislation. It was cited by the Fifth Circuit in Spurrier v. United States, 389 F.2d 367, 368 (1967), cert. denied 391 U.S. 922, 88 S.Ct. 1814, 20 L.Ed.2d 658, (1968), to this statement:

"We conclude that the trial court did not err in not requiring witness Hall to produce memoranda made by him to refresh his recollection if they were not in fact so used by him. See Goldman v. United States, 316 U.S.

129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942) and Needelman v. United States, 5 Cir., 261 F.2d 802."

Needelman v. United States, just cited, enlarged on the point, id. at 806:

"Narcotic agent Rudd did not use his memoranda or notes to refresh his recollection while testifying, but admitted that he refreshed his recollection from them before testifying. Such memoranda or notes made contemporaneously by the witness for the purpose of refreshing his own recollection are not strictly within the rule of Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, or of the statute passed to meet that decision, 18 United States Code § 3500, which relate to formal written statements or reports made by the witness and signed or otherwise adopted or approved by him. Unlike such statements or reports, the mere memoranda or notes could not be directly introduced for impeachment purposes, but might be used as a basis for cross-examining the witness. The case of Goldman v. United States, 1942, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1332, holding that it is discretionary with the trial court to require or not to require a witness to produce memoranda or notes from which he had refreshed his recollection before taking the stand, was not overruled by Jencks, supra."

Again, the District of Columbia Circuit in McGill v. United States, 106 U.S.App. D.C. 136, 270 F.2d 329, 331 (1959) touched the subject:

"The witness stated that he had made notes on the case which he had read to refresh his recollection prior to coming to court but that he had not used them in testifying. Demand being made for the production of the notes, the court held that if the officer had referred to the notes on the witness stand for the purpose of refreshing his recollection while he was testifying, then counsel, upon request, was entitled to look at those notes; but that if the witness had used those notes simply to refresh

his recollection before coming to court, counsel would not be entitled to require their production.

"We believe that the so-called 'Jencks' statute, 18 U.S.C. § 3500 (Supp. V, 1958), governs and that the notes demanded were not required to be produced under the terms of that statute. Cf. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Accordingly, the refusal of the trial court to order their production for the use of the defense was not error."

■ Furthermore, no deception was practiced on the defendants, inadvertently or deliberately, in respect to the Pennington memoranda. This was the factor of disapproval expressed in Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and in Barbee v. Warden, 331 F.2d 842, 846 (4 Cir. 1964). Here neither the United States Attorney's office nor the police were aware of the existence of any such notes. All of the Pennington memos they knew of or had, i. e. those of July 16 and 17, had been delivered to the defendants.

■ In any event, non-production of the Pennington memoranda was harmless error. United States v. Missler, 414 F.2d 1293, 1304 (4 Cir. 1969). No prejudice was shown. Pennington had been minutely cross-examined by each of the two defense attorneys. Crimes had been committed only on July 16 and 17; the notations of them had been adduced. There is no claim or indication whatsoever that any of the conversations or contacts occurring before these two days were in the slightest exculpatory of the defendants.

The latest word on the question appears in our decision of United States v. Atkinson, et al., 512 F.2d 1235 (1975). There it was emphasized that the prosecutor had no "duty under the standard set in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)· to disclose information to the defense when it is not even charged that Government *attorneys* were in possession of the information". (Accent added).

■ Still another defense of both Atkinson and Dubois was the prosecution's failure to have Pennington, while on the witness stand, to identify the packages and contents exhibited to the jury as those received by him at the Hayes residence on July 16 and 17. While this was an available method of proof, the identification was sufficiently made by the means adopted by the prosecution. It consisted of tracking the packages to, through and from every hand into which they passed until they reached the chemist. Each of the handlers, beginning with Pennington and ending with the chemist, vouched the exclusiveness of their custody.

Each defendant endeavored to prove an alibi, but the Government's evidence was sufficient to warrant the jury in agreeing that the accused were present at the time and place of the crimes charged to them. Further, we perceive no impermissible injection of prejudicial testimony by the prosecution. Nor was there error in the Court's definition of reasonable doubt.

■ Finally, neither Atkinson's 12-year sentence nor Dubois' four years can be counted as amounting to unusual or excessive punishment affronting the Eighth Amendment. Both defendants were more than 22 years old, and no obligation rested upon the court to inquire whether either would be benefitted by treatment under the Youth Corrections Act, 18 U.S.C. § 5005, although permissibly adaptable to them by virtue of the Young Adult Offenders Act, 18 U.S.C. § 4209.

The judgments on appeal should stand. Affirmed.

WINTER, Circuit Judge (concurring):

I concur in the judgment of the court and all of the opinion except the reasoning which supports the holding that there was no violation of the Jencks Act when the government failed to produce Pennington's handwritten notes of his meetings with drug dealers and sellers prior to the meetings of July 16 and 17, 1973. While I agree that these notes of

earlier meetings were not discoverable under the Jencks Act, I reach this conclusion on a different basis from that articulated by the majority.

The notes involved were Pennington's handwritten memoranda made by him after and as a result of his meetings with drug dealers and suppliers. Pennington had these meetings in his capacity as a paid government informer—paid by the state. Except for the notes of the meetings of July 16 and 17 which were turned over to the police, the notes of other meetings were not shown to the police or turned over to any government authority or the fact of their existence disclosed. They were retained by Pennington or his wife, or left at home, 3,500 miles away, where Pennington and his family were lodged in protective custody by the federal government until Pennington's presence as a witness at the trial was required.

I have no doubt that Pennington's notes were "statements" within the meaning of 18 U.S.C. § 3500(e)(1) (1975 Cum.Supp.), because they were made by Pennington and obviously "adopted or approved by him." The Act does not require that a writing be made at the solicitation of the government, or for the purposes of the government investigation, or even for the purpose of giving testimony in court. *See* Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). But, even though "statements," their production was not mandated by the Jencks Act because it encompasses only "any statement . . . of the witness *in the possession of the United States* which relates to the subject matter as to which the witness has testified." (Emphasis added.) 18 U.S.C. § 3500(b). By no stretch of the imagination do I think that on the facts presented it could be concluded that the unknown, undisclosed handwritten memoranda were "in the possession of the United States," and this should be the end of the issue.

Defendants contend that since Pennington was a government informer and he and his family were in protective custody, the statements were within the "possession of the United States" within the meaning of § 3500, and, alternatively, that Pennington was "a trained and knowledgable police agent in a joint state-federal investigation." I reject both arguments. Protective custody of Pennington and his family was no more possession by the United States of the undisclosed notes than it was possession by the United States of Pennington's wearing apparel, jewelry (if any), other personal belongings or the members of Pennington's family who were lodged with him. To state the proposition is to refute it. Second, Pennington was a paid informer—not a police officer. Moreover, Pennington was paid by the State of North Carolina as part of a cooperative federal-state venture; his possession was at most possession by the state. Possession by the state is not enough to warrant production under the Jencks Act in a subsequent federal prosecution. United States v. Conway, 415 F.2d 158 (3 Cir. 1969), cert. denied, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970); United States v. Harris, 368 F.Supp. 697, 708–09 (E.D.Pa.1973).

To summarize, I am of the view that purely as a matter of statutory construction, the Pennington notes sought to be obtained were not discoverable under the Jencks Act. Government of Virgin Islands v. Rodriguez, 300 F.Supp. 860, 865 (D.V.I.1969), aff'd 423 F.2d 9 (3 Cir. 1970), is precisely on point. I would not rest my decision on *Goldman,* decided before enactment of the Jencks Act, and its progeny—even those Courts of Appeals cases decided after enactment of the Jencks Act. In the first place, *Goldman* may not properly be applied here since adoption of the Jencks Act; *Rosenberg,* supra, held that a letter written by a witness to the F.B.I. expressing fear that her memory as to events in issue was poor was discoverable under the Act, although in that case nonproduction was harmless error. *Rosenberg* thus rests, as I do, on the statute and not a nice distinction as to whether a witness' own writing was used out-of-court to refresh his recollection or whether it was

used in-court as an aid to testimony. *See also* Campbell v. United States, 373 U.S. 487,'83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). To me, the better-reasoned Court of Appeals decisions are also based upon the statute and explicitly or impliedly reject the distinction. *See* Bergman v. United States, 253 F.2d 933 (6 Cir. 1958). *See also* Bradford v. United States, 271 F.2d 58 (9 Cir. 1959); Holmes v. United States, 271 F.2d 635 (4 Cir. 1959); United States v. Berry, 277 F.2d 826 (7 Cir. 1960).