**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Rogelio SOTO, Defendant-Appellee.**

**No. 81–5989.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 19, 1983.

Stanley Marcus, U.S. Atty., John F. Peyton, Jr., Asst. U.S. Atty., Miami, Fla., for plaintiff-appellant.

Joseph Mincberg, Miami, Fla., for defendant-appellee.

Before RONEY and ANDERSON, Circuit Judges, and GOLDBERG *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

The United States appeals from a district court order striking the testimony of two

---

* Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

government agents from the criminal trial of Rogelio Soto on the ground that the government violated the Jencks Act, 18 U.S.C. § 3500.[1] We reverse.

On September 18, 1978, appellee Soto was charged with conspiracy, possession with intent to distribute, and distribution of cocaine. A preliminary hearing was held before a magistrate on October 4, 1978, at which Agent Foley of the Drug Enforcement Administration ("DEA") testified for the government. During his testimony, Foley indicated that prior to testifying he had reviewed handwritten drafts of an undercover seizure report which he had previously prepared and a surveillance report which had been prepared by DEA Agent Schuller. Foley stated that these drafts were in "rough form" and had been given to a secretary for typing into final form. The following exchange then took place between appellee's attorney, Agent Foley, and the magistrate:

Q. (Mr. Gold [appellee's attorney]) At the time that you dictate those reports, do you have any type of rough notes that you have jotted down on a piece of paper ...?

A. No, sir. I usually just try to write it out and submit it for typing.

Q. Do I understand that, at the present time, the only thing the typist has is your longhand written notes?

A. Yes, sir.

Q. And you will ultimately seek to have her—

A. Put them in final form, that's correct.

THE COURT: Do you want him to preserve his rough notes?

MR. GOLD: Agent Foley? I would like the Court to instruct him.

THE COURT: .... Agent Foley, the DEA is to retain all of the rough notes and—

THE WITNESS: I'm aware of that, your Honor.

THE COURT: —and the untranscribed items.

Q. (Mr. Gold) Was Agent Schuller's report or memoranda, that you reviewed, also in the handwritten form, at the time that you reviewed it?

A. Yes, sir.

THE COURT: The same would apply, I meant Agent Schuller's, yours, Agent O'Leary's, and so forth.

Record on Appeal, vol. 3, at 10–11 (quoting the transcript of the preliminary hearing).

1. The relevant portions of the Jencks Act, 18 U.S.C. § 3500, provide:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . . . .

(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

When appellee's case was called for trial on August 4, 1981, appellee requested production of the materials which the magistrate had instructed the government to retain. The district court asked the government if those materials were available and, after a brief recess, the government informed the court that typed copies of the agents' reports were available but the agents could not produce either their rough notes or the handwritten drafts of their reports. Appellee then made an oral motion to dismiss the case or to strike the testimony of the DEA agents because they had not retained the handwritten drafts, and the court proceeded to conduct a hearing on the motion.

In support of the motion, appellee called DEA Agents Foley and Schuller. Agent Foley testified that he had not made any "rough notes" during his investigation because he had been working in an undercover capacity. Foley acknowledged that he had prepared a handwritten draft of a report on the investigation and, as indicated at the preliminary hearing, had submitted that draft to a secretary for typing. He also stated that after receiving the typed report he had made "typographical corrections" and then, in accord with his usual practice, had destroyed the longhand draft. When asked to explain why he destroyed the handwritten draft in light of the magis-

trate's instructions at the preliminary hearing, Foley indicated that he assumed that the magistrate's instructions referred solely to rough notes and untranscribed tape recordings, not to handwritten drafts of reports which would subsequently be typed.[2]

Agent Schuller testified that he had made rough notes during the investigation, but had destroyed them immediately after preparing a handwritten draft of a surveillance report on the investigation. Schuller confirmed that the handwritten draft of his surveillance report was in existence on October 4, 1978, the date of the preliminary hearing, but stated that he had destroyed it after receiving the typewritten report back from a secretary. Schuller admitted that Agent Foley had advised him of the court's instructions at the preliminary hearing,[3] but indicated that he believed the court was referring to the rough notes, which he had already destroyed, rather than the handwritten draft of his report which had been submitted to a secretary for typing.

The district court found that the DEA agents had not acted in bad faith when they destroyed the handwritten drafts of their reports. The court also found, however, that the drafts were Jencks Act material which should have been retained by the government. Based on this latter finding,[4] the district court struck the testimony of

---

2. The following excerpt from the pre-trial hearing reveals Agent Foley's apparent understanding of the magistrate's instructions:

> Q. (By Mr. Moran [appellee's attorney]) What was your understanding, then, Mr. Foley, of the Court's instructions ....
> A. As far as notes were concerned, any rough notes that I made in the course of the investigation. The report I made was exactly that, a report. Untranscribed items to me, through my ignorance, if nothing else, refer to tapes ....
> Q. ....
> What did you think the Court was referring to when it said the same would apply to the handwritten form that you had reviewed of Mr. Schuller's?
> A. As I stated before, Mr. Moran, rough notes are rough notes. A report is a report to me. And that's not what I believe they were saying at this time. And to this day, I destroy handwritten reports and keep notes.

Record on Appeal, vol. 3, at 50–52.

3. Schuller was not personally present at the preliminary hearing.

4. Although the district court found that the agents acted in good faith when they destroyed the reports and expressly based its ruling on the Jencks Act, the record indicates that the court's decision was significantly influenced by the agents' violation of the magistrate's retention instructions. The court stated, for example, that the distinction between this case and all of the Jencks Act cases cited by the parties was "that the witness, Mr. Foley, was indeed before United States Magistrate Shapiro ...." Record on Appeal, vol. 3, at 99. Moreover, the statements immediately preceding the court's announcement of its ruling suggest that the court was focusing primarily on the violation of the magistrate's instructions rather than the Jencks Act issues. After briefly reviewing

Agents Foley and Schuller with respect to any matters which were included in the destroyed handwritten drafts. This appeal followed.

The Jencks Act, 18 U.S.C. § 3500,[5] requires the government to produce, on motion by the defendant, any statement of a government witness which relates to the subject matter of the witness's testimony. A statement, as defined in the Act, includes "a written statement made by said witness and signed or otherwise adopted or approved by him". 18 U.S.C. § 3500(e)(1).

█ In this case, the court below found that the handwritten drafts of the agents' reports constituted statements under the Jencks Act because "they were relied on [by Agent Foley] in testifying before the magistrate and were used to prepare [the agents'] written final report[s]." Record on Appeal, vol. 3, at 100 (oral findings by the district judge). This finding was inconsistent with the case law in this circuit and the former Fifth Circuit[6] interpreting the

some of the former Fifth Circuit case law cited by the government, the court stated:

> [N]othing in the Jencks Act requires that notes made in the course of an investigation be preserved, after the notes have served their purpose, of assisting in the preparation of interview reports.
>
> However, in this case, Magistrate Shapiro ordered that the handwritten notes be preserved. And I find that on the day the Magistrate so ordered, there were rough notes in existence. And those notes should not have been destroyed. So, based on 18 U.S.C. § 3500(d), I will strike the testimony of the agents ...

*Id.* at 100. (The district court stated that "rough notes" were in existence at the time of the preliminary hearing before the magistrate, but we believe the district judge was referring to the handwritten drafts of the agents' reports. The record reveals that this case has been plagued from the outset by a failure to distinguish between "rough notes," *e.g.*, the surveillance notes made by Agent Schuller which the record indicates had been destroyed prior to the preliminary hearing, and handwritten drafts of reports, *e.g.*, the drafts prepared by Foley and Schuller which were destroyed after the preliminary hearing. The district judge apparently failed to make this distinction when making his oral findings.)

meaning of the term statement as used in the Jencks Act.

In one of the former Fifth Circuit's first Jencks Act decisions, Judge Rives ruled that a witness's memoranda or notes do not become statements for purposes of the Jencks Act simply because the witness uses them to refresh his recollection prior to taking the stand. *See Needelman v. United States,* 261 F.2d 802 (5th Cir.1958) (relying on *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942)), *cert. dismissed,* 362 U.S. 600, 80 S.Ct. 960, 4 L.Ed.2d 980 (1960); *see also Lambert v. United States,* 261 F.2d 799 (5th Cir.1958). Several subsequent decisions reaffirmed this ruling. *See Spurrier v. United States,* 389 F.2d 367 (5th Cir.1967), *cert. denied,* 391 U.S. 922, 88 S.Ct. 1814, 20 L.Ed.2d 658 (1968); *Tillman v. United States,* 268 F.2d 422 (5th Cir.1959); *see also United States v. Atkinson,* 513 F.2d 38 (4th Cir.1975); *McGill v. United States,* 270 F.2d 329 (D.C.Cir. 1958), *cert. denied,* 362 U.S. 905, 80 S.Ct. 615, 4 L.Ed.2d 555 (1960).[7] Thus, the dis-

5. *See* note 1 *supra.*

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

7. *Cf.* Fed.R.Evid. 612 (providing that an adverse party is entitled to production of a writing used by a witness to refresh his memory while on the stand, but only is entitled to production of a writing used by a witness to refresh memory *before* testifying "if the court in its discretion determines it is necessary in the interests of justice.") Although Rule 612, by its terms, is subject to the provisions of the Jencks Act, the legislative history of the rule supports the former Fifth Circuit's interpretation of the Act in *Needelman* and the other cases cited in the text. An early draft of the Federal Rules of Evidence rejected the traditional distinction between writings used to refresh recollection while testifying and writings used to refresh recollection before testifying, giving adverse parties a right to require production of the writings in both situations. Fed. R.Evid. 612 advisory committee note. The House Judiciary Committee amended this provision "to render the production of writings

trict court erred when it found that the handwritten drafts of the agents' reports became Jencks Act materials when Agent Foley used them to refresh his recollection before the preliminary hearing.

█ The district court also erred in ruling that the handwritten drafts became Jencks Act materials when the agents used them "to prepare their written final report[s]." No decision of this circuit or the former Fifth Circuit indicates that either rough notes or the rough draft of a report prepared by a government agent become Jencks Act material merely because the agent uses them to prepare his final report. Indeed, the case law is directly contrary to such a proposition.[8] *See, e.g., United States v. Martin,* 565 F.2d 362 (5th Cir.1978) (where FBI agent's handwritten notes of interviews with defendant "have been destroyed in good faith, following customary agency procedure, and the interview report prepared therefrom is given to the defendant, this Circuit has ruled that there is no Jencks Act violation"); *United States v. Pacheco,* 489 F.2d 554, 566 (5th Cir.1974) ("Nothing in the Jencks Act requires that

notes made in the course of an investigation be preserved after the notes have served their purpose of assisting in the preparation of interview reports."), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *see also United States v. Surface,* 624 F.2d 23, 26 (5th Cir.1980) (government produced typewritten copy of informant's statement which informant testified was prepared because handwritten draft contained spelling and punctuation errors; court ruled that failure to produce handwritten draft was "either harmless error ... or no error at all"); *cf. United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981) (government produced typed copies of agent's reports rather than handwritten drafts; court held there was no Jencks Act violation, noting that the typing of a handwritten draft and correction of the typewritten version entail very little risk of distortion or inadvertent input), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Kaiser,* 660 F.2d 724 (9th Cir.1981) (holding that agent's handwritten rough draft of investigation report was not Jencks Act material because "it was neither intended as a final

used by a witness to refresh his memory before testifying discretionary with the court ..., *as is the case under existing federal law.*" H.Rep. No. 93–650, 93 Cong., 2d Sess. 13, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7075, 7086 (emphasis added). The Committee Report then cited *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), the case relied on by the former Fifth Circuit in *Needelman,* thus suggesting that this aspect of *Goldman* is still good law. Further, the Committee's rationale for amending the rule corresponds with one of the primary purposes underlying the Jencks Act itself, to prevent "fishing expeditions among a multitude of papers which a witness may have used in preparing for trial." *Id.* Cf. Sen.Rep. No. 981, 85th Cong., 1st Sess. 2–3, *reprinted in* 1957 U.S. Code Cong. & Ad.News 1861, 1862 (stating that the Jencks Act is designed "to make certain that the decision in the Jencks case is not to be interpreted ... as exposing Government files in a manner which the Supreme Court, in *Gordon v. United States,* (344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447) called 'any broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up.' ")

8. The district court's suggestion that everything an agent uses when preparing his final report becomes a statement for Jencks Act purposes is not only unsupported by prior cases in this circuit and contrary to the apparent meaning of the Jencks Act (which requires in relevant part that a statement be "signed or otherwise adopted or approved"), but also might create enormous administrative problems. *Cf. United States v. Spencer,* 618 F.2d 605, 607 (9th Cir.1980) (stating that the "retention requirements implicit in [defendant's] proposed reading of the Jencks Act are potentially staggering" because the government would be required to maintain "every scrap of paper" and all original tapes of conversations, thus creating "an unwieldy national attic of scrap paper and magnetic tape which would not advance the cause of justice"); *United States v. Carrasco,* 537 F.2d 372, 377 (9th Cir.1976) ("The benefits to defendants in those few cases [where] revision produces substantial distortion may not justify the costs of retaining all rough notes in all cases.").

statement nor as simply a contemporaneously factual account of what a witness said ... [and] was, therefore, not 'adopted or approved'" by the agent), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674 and 457 U.S. 1121, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982).[9]

We hold, therefore, that the district court erred when it ruled that the handwritten drafts became Jencks Act material because they were used to refresh Agent Foley's recollection or because they were used in preparing the typewritten reports.[10] Accordingly, the ruling of the district court is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.

9. In arguments before the district court and in his brief on appeal, appellee relied heavily on another Ninth Circuit case, *United States v. Bernard,* 607 F.2d 1257 (9th Cir.1979) (holding that DEA agent's rough surveillance notes, which had been destroyed, were statements for Jencks Act purposes and, therefore, agent could not testify at defendant's trial). Appellee apparently failed to notice that the Ninth Circuit subsequently revised and reissued its decision in that case. *See United States v. Bernard,* 623 F.2d 551, 558 (9th Cir.1979) ("We are satisfied that the Jencks Act was not intended to cover rough surveillance notes of the type [the agent] made and later destroyed when he prepared his written report. The destruction of the notes will not preclude his testifying at trial.").

10. Appellee has not suggested any other ground to support the district court's ruling that the handwritten drafts were Jencks Act material, and thus we need not decide whether there are other circumstances in which the handwritten draft of an agent's report might be a statement for Jencks Act purposes even though a typed copy was produced by the government. We note, however, that the magistrate's instructions in this case could not convert non-Jencks Act material into Jencks Act material. Further, while destruction of documents in violation of a magistrate's order might on some occasions be evidence of bad faith and warrant a severe sanction, the court below expressly found that Agents Schuller and Foley acted in good faith and in accord with then-existing agency practice when they destroyed the handwritten drafts of their reports. Under such circumstances, striking the agents' testimony would not be an appropriate sanction for the violation of the magistrate's instructions. *Cf. United States v. Sarcinelli,* 667 F.2d 5, 5 (5th Cir.1982) (Unit B) (holding that district court abused its discretion when it suppressed virtually all of the evidence against defendants because prosecutor failed to timely comply with magistrate's discovery orders; court should have considered a less severe sanction which would not "deprive the government of the most probative and incriminating evidence available to it").