**UNITED STATES of America, Plaintiff,**

v.

**Raul GARCIA–SALAZAR, Defendant.**

**Crim. No. 95–20033–01 GTV.**

United States District Court,
D. Kansas.

June 9, 1995.

John M. Duma, Kansas City, KS, David J. Phillips, Office of Federal Public Defender, Topeka, KS, for Raul Garcia–Salazar.

Charles R. Harvey, Overland Park, KS, for Tobias Verduzco.

Robert S. Streepy, Office of U.S. Atty., Kansas City, KS, for U.S.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court on defendant Raul Garcia–Salazar's motion to dismiss Count III of the indictment.

Count III charges Garcia–Salazar with possession with intent to distribute 20 pounds of marijuana within 1000 feet of an elementary school, a violation of 21 U.S.C. § 860,[1] sometimes referred to as the Drug–

---

1. That statute provides in pertinent part:
   Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or

Free School Zones Act. The defendant contends, in view of the Supreme Court's recent decision in *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), that § 860 is an unconstitutional exercise of Congress' power under the Commerce Clause.[2]

In *Lopez*, the Court addressed the constitutionality of the Gun–Free School Zones Act, 18 U.S.C. § 922(q), which prohibited possession of a firearm within 1000 feet of a school. Speaking for the majority, Chief Justice Rehnquist began with a historical overview of Commerce Clause law. It is well established that under the Commerce Clause, Congress "may regulate the use of the channels of interstate commerce"; may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and may regulate "activities that substantially affect interstate commerce."[3] —— U.S. at ——–——, 115 S.Ct. at 1629–30 (citations omitted). The Court determined Congress was empowered to enact the Gun–Free School Zones Act only if the Act regulated an activity substantially affecting interstate commerce.

Examples of congressional acts the Court has upheld as substantially affecting interstate commerce include "regulation of intrastate coal mining," "intrastate extortionate credit transactions," "restaurants utilizing substantial interstate supplies," "inns and ho-

tels catering to interstate guests," and "production and consumption of home-grown wheat." *Id.* at ——, 115 S.Ct. at 1630. Chief Justice Rehnquist characterized the wheat case, *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), as "perhaps the most far reaching example of Commerce Clause authority over intrastate activity." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1630. At issue in *Wickard* was the Agricultural Adjustment Act of 1938, which was "designed to regulate the volume of wheat moving in interstate and foreign commerce in order to avoid surpluses and shortages, and concomitant fluctuation in wheat prices." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1630. A farmer was assessed a penalty under the act for exceeding by 12 acres his acreage allotment for wheat production. After harvesting his 23–acre crop, the farmer sold some wheat, kept some for feed and home consumption, and used the remainder for seed. The *Wickard* court upheld application of the Act to the farmer's activity, reasoning:

"One of the primary purposes of the Act in question was to increase the market price of wheat and to that end to limit the volume thereof that could affect the market. It can hardly be denied that a factor of such volume and variability as home-consumed wheat could have a substantial influence on price and market conditions. This may arise because being in marketable condition such wheat overhangs the

video arcade facility, is … subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense. A fine up to twice that authorized by section 841(b) of this title may be imposed in addition to any term of imprisonment authorized by this subsection. Except to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title, a person shall be sentenced under this subsection to a term of imprisonment of not less than one year. The mandatory minimum sentencing provisions of this paragraph shall not apply to offenses involving 5 grams or less of marihuana.
21 U.S.C. § 860(a).

**2.** The Constitution empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

**3.** The *Lopez* Court acknowledged:

Within this final category, admittedly, our case law has not been clear whether an activity must "affect" or "substantial affect" interstate commerce in order to be within Congress' power to regulate it under the Commerce Clause. We conclude, consistence with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity "substantially affects" interstate commerce.
—— U.S. at ——, 115 S.Ct. at 1630 (citations omitted).

Previously, the Tenth Circuit Court of Appeals only required a *de minimis* impact upon interstate commerce. *See United States v. Esch*, 832 F.2d 531, 540 (10th Cir.1987) ("Congress has the inherent power to prohibit criminal activity under the Commerce Clause even though the effect of such activity on interstate commerce may be *de minimis*."), *cert. denied*, 485 U.S. 908, 991, 108 S.Ct. 1084, 1299, 99 L.Ed.2d 242, 509 (1988).

market and, if induced by rising prices, tends to flow into the market and check price increases. But if we assume that it is never marketed, it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this sense competes with wheat in commerce."

*Lopez*, —— U.S. at ——, 115 S.Ct. at 1630 (quoting *Wickard*, 317 U.S. at 128, 63 S.Ct. at 90).

Chief Justice Rehnquist then contrasted the Gun–Free School Zones Act with *Wickard*, concluding:

> Section 922(q) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Lopez*, —— U.S. at ——–——, 115 S.Ct. at 1630–31. The statute also did not require that a nexus be shown, on a case-by-case basis, between interstate commerce and possession of the gun at issue. *Id.* at ——, 115 S.Ct. at 1631. Additionally, in cases in which the regulated activity's impact upon interstate commerce is not "visible to the naked eye," specific or formal congressional findings, although not required, enable the Court "to evaluate the legislative judgment that the activity in question substantially affected interstate commerce." *Id.* at ——, 115 S.Ct. at 1632. With regard to the enactment of § 922(q), no such findings existed. The Court rejected the Government's contention "that Congress has accumulated institutional expertise regarding the regulation of firearms through previous enactments" because " 'section 922(q) plows thoroughly new ground and represents a sharp break with the long-standing pattern of federal firearms legislation.' " *Id.* (quoting *United States v. Lopez*, 2 F.3d 1342, 1366 (5th Cir.1993),

*aff'd,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

The Court found unpersuasive the Government's "costs of crime" and "national productivity" arguments. The Government argued that possessing a gun in a school zone could trigger violent crime, which impacts the national economy through spreading of insurance costs and through individuals' unwillingness to travel to areas perceived unsafe. The Government also argued guns at school adversely influence the national economy because such activity threatens the educational process and a handicapped learning environment results in less productive citizens.

The Court acknowledged prior case law gave "great deference to congressional action," but the Court declined to further expand Congress' power pursuant to the Commerce Clause. *Id.* at ——, 115 S.Ct. at 1634. Acceptance of the Government's arguments, according to the Court, would allow Congress to regulate all activity potentially producing violent crime or impacting an individual's economic productivity. Accordingly, there would be no limits on the type of activity Congress could oversee, including areas in which States historically have governed such as education and family law. The end result would convert "congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* The Court concluded "possession of a gun in a local school zones is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.*

Here, too, if 21 U.S.C. § 860 can withstand a Commerce Clause challenge, it is because the regulated activity substantially affects interstate commerce. According to the Government, however, the similarity between the two statutes ends there. The Government contends the Drug–Free School Zones Act is distinguishable from the Gun–Free School Zones Act in that the former "*directly* regulates commerce in drugs." (Govt.'s Response, at 3.) The Government points out the existence of a large interstate market for illegal drugs and Congress' power to regulate that market as well as food and drugs in general. *See, e.g., Minor v. United States,*

396 U.S. 87, 98 n. 13, 90 S.Ct. 284, 289 n. 13, 24 L.Ed.2d 283 (1969) ("a flat ban on certain [narcotic drug] sales ... is sustainable under" the Commerce Clause); *Reina v. United States*, 364 U.S. 507, 511, 81 S.Ct. 260, 263, 5 L.Ed.2d 249 (1960) (in context of a Tenth Amendment challenge to grant of immunity section of Narcotic Control Act of 1956, Court referred to Congress' "undoubted power to enact the narcotics laws"); *United States v. Walsh*, 331 U.S. 432, 434, 67 S.Ct. 1283, 1284, 91 L.Ed. 1585 (1947) ("The Federal Food, Drug, and Cosmetic Act [of 1938] rests upon the constitutional power resident in Congress to regulate interstate commerce."); *Yee Hem v. United States*, 268 U.S. 178, 183, 45 S.Ct. 470, 471, 69 L.Ed. 904 (1925) ("The authority of Congress to prohibit the importation of opium in any form and, as a measure reasonably calculated to aid in the enforcement of the prohibition, to make its concealment with knowledge of its unlawful importation a criminal offense, is not open to doubt."); *McDermott v. Wisconsin*, 228 U.S. 115, 128, 33 S.Ct. 431, 433, 57 L.Ed. 754 (1913) ("no longer open to question" that Congress has full and ample power to regulate food and drugs). It matters not whether the congressional purpose was noncommercial in nature, e.g., to legislate against moral wrongs, or whether the activity was intrastate in character so long as the regulated activity substantially affects interstate commerce. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 257–58, 85 S.Ct. 348, 357–58, 13 L.Ed.2d 258 (1964).

Additionally, when enacting the Comprehensive Drug Abuse Prevention and Control Act of 1970, of which 21 U.S.C. § 860 is now a part, Congress found drug trafficking, whether interstate or intrastate in character, substantially affected interstate commerce.[4] The parties do not direct the court to any congressional findings concerning the 1984 enactment of 21 U.S.C. § 845a (now codified at 21 U.S.C. § 860). It seems likely Congress made no such findings. *See* Comprehensive Crime Control Act of 1984, Pub.L. 98–473, § 503, 1984 U.S.C.C.A.N. (98 Stat. 2069) 3182, 3440–42. Congress is not required to make such findings. It is only if the substantial connection is not readily apparent that the findings take on import. *See Lopez*, —— U.S. at —— ——, 115 S.Ct. at 1631–32 (citing *Perez v. United States*, 402 U.S. 146, 156, 91 S.Ct. 1357, 1362, 28 L.Ed.2d 686 (1971); *Katzenbach v. McClung*, 379 U.S. 294, 304, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964)). Here, the substantial effect upon interstate commerce is readily apparent. Additionally, it is the opinion of this court that the Drug–Free School Zones Act, unlike the Gun–Free School Zones Act, does not plow new ground or represent a sharp break with previous drug trafficking legislation.

The *Lopez* decision does not mandate this court find § 860 unconstitutional; 18 U.S.C. § 922(q) and 21 U.S.C. § 860 are distinguishable. Section § 922(q) punishes pure possession of a firearm near a school, whereas

---

**4.** Congress found in pertinent part:

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate....

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

21 U.S.C. § 801; *see* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 1970 U.S.C.C.A.N. (84 Stat.) 4566, 4595–96.

§ 860 prohibits drug trafficking, e.g., distributing, possessing with intent to distribute, and manufacturing, near a school. Drug trafficking is inherently commercial in nature; firearm possession is not. In contrast to the firearm possession at issue in *Lopez,* drug trafficking in a local school zone is an economic activity that, through repetition elsewhere, substantially affects interstate commerce.

Prior to *Lopez,* the Ninth Circuit considered and rejected a Commerce Clause challenge to 21 U.S.C. 845a, reasoning:

> Congress has stated and we have confirmed that drug trafficking is a national concern which affects interstate commerce. This is true wherever it occurs, whether it be on or near a school yard or elsewhere. The fact that Congress also sought to protect children from the sale of drugs will not render unconstitutional its otherwise constitutional efforts to regulate drug trafficking.

*United States v. Thornton,* 901 F.2d 738, 741 (9th Cir.1990). The Ninth Circuit confirmed this rationale in *United States v. McDougherty,* 920 F.2d 569, 572 (9th Cir.1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991), stating "[i]t would be highly illogical to believe that such trafficking somehow ceases to affect commerce when carried out within 1000 feet of a school." The *McDougherty* court further explained:

> The schoolyard statute does not in any way regulate the schools themselves: it merely increases the punishment for those who sell drugs near the school. Drug trafficking is surely not a purely local concern, and in fact is already a federal crime, even in the absence of the schoolyard provision.

*Id.* at 572 n. 2. The *Lopez* decision does not disturb the holding and rationale of the *Thornton* and *McDougherty* decisions with which this court agrees.

The court finds 21 U.S.C. § 860 is a constitutional exercise of congressional authority under the Commerce Clause.

IT IS, THEREFORE, BY THE COURT ORDERED that Raul Garcia–Salazar's motion to dismiss Count III of the indictment (Doc. 34) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**