UNITED STATES of America,

v.

Edward D. WATSON, Movant.

Nos. 89–20028–EEO, 96–3238–EEO.

United States District Court,
D. Kansas.

Sept. 27, 1996.

Carl E. Cornwell, Cornwell & Edmonds, Overland Park, KS, for Edward D. Watson.

Jackie N. Williams, United States Attorney, Robin D. Fowler, Assistant U.S. Attorney, Kansas City, KS, Government Counsel.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. # 60). Having reviewed all materials filed, together with pertinent portions of the record, the court makes the following findings and order.

### Factual Findings

On September 16, 1989, defendant was stopped by a Kansas City, Kansas police officer after the car he was driving sped away from the area where police were responding to a report of an attempted burglary. Also, the license tags on the vehicle were expired. The officer asked to see defendant's proof of insurance and defendant said it was in the car. When defendant turned around to retrieve it, the officer noticed a gun sticking out of defendant's suit coat. The officer took a fully-loaded Smith & Wesson .357 handgun from the holster defendant was wearing and placed him under arrest for possession of a handgun.

As the officer attempted to conduct a pat down search of defendant, defendant took a

bag containing 20.3 grams of cocaine base ("crack cocaine") out of his front pants pocket and threw it down. The officer also found $928 in currency in a wad in defendant's pocket. While searching the passenger compartment of the vehicle, the officers found some government WIC food vouchers, a pipe used for smoking narcotics, and another bag containing 2.4 grams of rock crack cocaine. In the trunk, they found a paper bag containing a roll of $1,840 in U.S. currency, a blue Crown Royal bag containing $72.30 in assorted coins, and a brown paper sack containing $79.45 in assorted coins.

On October 4, 1989, defendant was charged in a two-count information with possession with intent to distribute approximately 27 grams of crack cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), and knowingly using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

On November 17, 1989, a jury was impaneled and the defendant's trial began. After the government presented nearly all of its case in chief, the defendant agreed to plead guilty to the lesser-included offense of simple possession of crack cocaine in violation of 21 U.S.C. § 844, and the section 924(c) gun count (Counts 1 and 2, of the Superseding Indictment, respectively). On November 20, 1989, the jury was dismissed after the defendant pled guilty to both counts.

During the plea colloquy, defendant raised no challenge to evidence that had been presented at trial as the factual basis for his plea on either count. Specifically, he made no mention of a legitimate purpose for the presence of the gun (although he did contend as much at the sentencing hearing). Defendant stated that he was satisfied with the services of his attorney, that it was his decision to enter the pleas, not his attorney's, and that he was entering his pleas freely and voluntarily.[1] Defendant admitted that he was entering the pleas of guilty because he was, in fact, guilty of the crimes charged.

Defendant was sentenced on January 22, 1990, to five years on Count 1 and five years on Count 2, to be served consecutively. Defendant did not take a direct appeal, but filed an initial section 2255 motion on February 24, 1992, seeking to vacate his sentence, alleging, *inter alia*, ineffective assistance of counsel and that possession of crack cocaine in violation of 21 U.S.C. § 844 cannot serve as a predicate act for an 18 U.S.C. § 924(c) violation. We denied defendant's motion and the Tenth Circuit affirmed. *United States v. Watson*, No. 92–3292, 1993 WL 128697, at *2 (10th Cir. April 22, 1993).

In this most recent section 2255 motion, defendant alleges ineffective assistance of counsel, that his plea to the gun count was not knowing and voluntary, and that there is no factual basis for his guilty plea on the section 924(c) charge. Defendant essentially raises two constitutional challenges, based on two recent Supreme Court opinions: (1) in light of *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), defendant could not violate section 924(c) by inadvertently carrying the firearm while possessing crack cocaine, and (2) in light of *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), section 844 is unconstitutional because simple possession of crack cocaine lacks the requisite interstate commerce connection for federal jurisdiction.

### Analysis

#### I. The 18 U.S.C. § 924(c) firearm offense.

Defendant contends that he would not have pled guilty if his attorney had not erroneously advised him that he violated section 924(c) when he jointly possessed the gun and the crack cocaine. Defendant urges that, after *Bailey*, this advice is erroneous as a matter of law. He claims ineffective assis-

---

1. The court questioned defendant extensively at his Rule 11 hearing concerning defendant's motivation for entering his guilty pleas and defendant repeatedly professed that he was doing so freely, voluntarily, and because he was guilty of the crime charged. Defendant and his attorney indicated that after hearing most of the government's case against defendant, they met with defendant's family and decided that defendant should plead guilty to the gun charge and the lesser offense of simple possession.

tance of counsel and that his plea was not knowing and voluntary.

■ The government argues that defendant waived any such challenges by failing to raise them on direct appeal. Generally, a defendant may not raise issues which could have been raised on direct appeal in a section 2255 motion. *United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir.1996); *Watson*, 1993 WL 128697 at *1 (citing *United States v. Khan*, 835 F.2d 749, 753 (10th Cir.1987)). "Failure to raise on direct appeal issues cognizable on direct appeal requires a section 2255 movant to show 'cause and prejudice' to justify raising those issues in the section 2255 motion." *Watson*, 1993 WL 128697 at *1.

■ However, the Tenth Circuit recently held that the Supreme Court's ruling in *Bailey*, —— U.S. ——, 116 S.Ct. 501, applies retroactively to convictions resulting from guilty pleas. *Barnhardt*, 93 F.3d at 709; *United States v. Deases*, 923 F.Supp. 170, 171 (D.Kan.1996) (citing *United States v. Fletcher*, 919 F.Supp. 384 (D.Kan.1996)). "The rationale behind the ruling is that a person who pleads guilty to activity not constituting a crime should not be precluded from collaterally attacking the validity of the sentence for that activity (under 28 U.S.C. § 2255)." *Id.* Accordingly, defendant may challenge his sentence on the section 924(c) violation via a section 2255 motion.

With respect to defendant's claim of ineffective assistance of counsel, the Tenth Circuit has summarized the standards for evaluating claims of ineffective assistance of counsel in *United States v. Smith*, 10 F.3d 724, 728 (10th Cir.1993):

> The benchmark of an ineffective assistance of counsel claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "To establish ineffective assistance of counsel sufficient to warrant reversal of a conviction, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense." *United States v. Pena*, 920 F.2d 1509, 1518 (10th Cir.1990) [*cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991) ] (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Because a defendant must meet both of these requirements to establish an ineffective assistance of counsel claim, a claim may be disposed of for failure to meet either criteria. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069; *e.g., Coleman v. Brown*, 802 F.2d 1227, 1233 (10th Cir. 1986).

The standard for determining whether an attorney's performance is deficient or not is that of reasonably effective assistance. "In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances" and a defendant must demonstrate that counsel's conduct fell below an objective standard of reasonableness given prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. In making this determination, we are to avoid the distorting effects of hindsight and we are required to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. A defendant must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," and we are reminded that there are "countless ways to provide effective assistance" of counsel. *Id.*

Defendant alleges ineffective assistance in that his attorney erroneously advised him that he was guilty of a section 924(c) violation, and that he should plead guilty to the lesser-included charge of simple possession under section 844 (and the section 924(c) firearm violation). We find that counsel was not ineffective in either instance.

■ First, counsel's advice to defendant that he was legally guilty of violating section 924(c) was not erroneous. Even after *Bailey*, there was ample evidence that defendant violated section 924(c).

The Supreme Court in *Bailey* held that "to sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime," mere possession will not suffice. *Bailey,* —— U.S. at ——, 116 S.Ct. at 506; *see also United States v. Miller,* 84 F.3d 1244, 1260–61 (10th Cir.1996).

Defendant asserts that he did not violate section 924(c) because he was legally carrying the gun while engaging in the duties of his business as a retail grocer, pursuant to a "commission" issued to him by the sheriff's department. Defendant contends that he was returning from the bank when he was stopped by the officers on September 16, 1989. He urges that because, under *Bailey,* a section 924(c) conviction requires evidence of active employment of the firearm and no such evidence was presented in his case, he cannot have violated the statute merely by having the gun in his holster while possessing crack cocaine.

■ Defendant's argument ignores that his conviction can be upheld under the "carry" prong of section 924(c), which does not similarly require active employment of the firearm.[2] *See Bailey,* —— U.S. at ——, 116 S.Ct. at 507 ("a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing during a drug transaction"); *Barnhardt,* 93 F.3d at 710–11 (guilty plea upheld under the "carry" prong where defendant was carrying the gun in the back of his pants during a drug transaction). As used in section 924(c), "carry" requires only "possession of the firearm through dominion and control, and transportation or movement of the weapon." *United States v. Richardson,* 86 F.3d 1537, 1548 (10th Cir. 1996). Defendant does not seriously argue that he was not "carrying" the gun when he was arrested.

■ Rather, he maintains that there was no evidence that it was carried "during

and in relation to a drug trafficking offense," a separate element of section 924(c). We disagree. To establish the requisite nexus between a firearm and a drug offense, "there must be evidence that defendant 'intended the weapon to be available for use during [a] drug transaction.'" *Miller,* 84 F.3d at 1260 (quoting *United States v. Nicholson,* 983 F.2d 983, 990 (10th Cir.1993)). The defendant must have "availed himself of the firearm" and the firearm must have "played an integral role" in a drug trafficking offense. *Id.* The government may prove that a firearm was readily accessible and the defendant availed himself of it "by showing a close proximity between the firearm and the drugs." *Id.* (*United States v. Ramirez,* 63 F.3d 937, 946 (10th Cir.1995)). Such evidence creates a presumed nexus between the firearm and the drug offense, *United States v. Holland,* 10 F.3d 696, 699 (10th Cir.1993), *cert. denied,* 510 U.S. 1064, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994) (cited with approval post–*Bailey* in *United States v. Rojas,* 56 F.3d 78, 1995 WL 326127, at *4 (10th Cir. June 1, 1995)), which defendant may overcome by evidence that "the firearm was present for a reason other than facilitating the drug operation." *United States v. Parrish,* 925 F.2d 1293, 1298 (10th Cir.1991).

■ Defendant's assertion that he was carrying the gun for legal reasons related to his business does not suffice to overcome the presumed nexus between the firearm and the drugs. The Tenth Circuit rejected a very similar argument in *Nicholson,* 983 F.2d at 990: "the fact that defendant carried the weapon for personal protection when engaged in lawful activities does not negate the effect of its presence during illegal narcotics transactions."

Moreover, in entering his pleas of guilty to the section 924(c) firearm charge and the lesser-included offense of simple possession under section 844, defendant received a substantial benefit, in exchange for his waiver of

---

2. Defendant was charged and plead guilty to violating section 924(c) under both the *use* and *carry* prongs of the statute. Under those circumstances, evidence sufficient to establish either prong will support a conviction and guilty plea. *United States v. Wacker,* 72 F.3d 1453, 1464 (10th

Cir.1995); *United States v. Miller,* 84 F.3d 1244, 1257–61 (a conviction must be affirmed if "there is sufficient evidence to support it under either of the alternative grounds"); *Barnhardt,* 93 F.3d at 709–11.

any factual challenge he may have had to the "in relation to" element of section 924(c) offense.

Under all of the circumstances of this case, counsel's advice to defendant to plead guilty was well within the "objective standard of reasonableness given prevailing professional norms." The government presented ample evidence at trial from which the jury could have convicted defendant, not only of the firearm charge, but also of the section 841(a)(1) violation for possession of crack cocaine with intent to distribute. It was not unreasonable for defendant's counsel to advise him to plead guilty to the lesser-included offense of simple possession.

We note that defendant's argument that simple possession of crack cocaine does not qualify as an underlying drug transaction which will support a section 924(c) offense has already been considered and rejected in defendant's earlier section 2255 motion. "Simple possession of more than five grams of cocaine base has been defined by Congress as being a predicate offense for section 924(c)." *United States v. Watson,* 1993 WL 128697 at * 2. For all these reasons, counsel's advice that defendant had violated section 924(c) was not erroneous and did not amount to ineffective assistance of counsel. For these same reasons, defendant's argument that the erroneous advice of counsel, with respect to his guilt on the section 924(c) charge, rendered his plea unknowing and involuntary is without merit.

■ We also disagree with defendant's argument that his plea of guilty lacks a factual basis because the court did not elicit an admission from the defendant, at the Rule 11 allocution, that he was carrying the gun for the purpose of furthering his possession of the crack cocaine. The evidence at trial was uncontroverted that defendant was carrying the gun in close proximity to the crack cocaine, both of which were on his person, when he was arrested. Defendant did not

challenge this evidence, that he was carrying the gun during and in relation to his possession of the cocaine, at the plea hearing—it was not until defendant's sentencing hearing, well after the court had found a factual basis for defendant's guilty plea, that defendant attempted to assert that he was carrying the gun for legitimate reasons. The evidence at trial, which the court expressly referred to during the plea hearing as the factual basis for the charges against defendant, amply supports the court's finding that there was a factual basis for defendant's guilty plea to the section 924(c) violation under the carry prong.

*II. The Constitutionality of 21 U.S.C. § 844.*

■ Defendant next challenges the constitutionality of 21 U.S.C. § 844,[3] arguing that it is very similar to the Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), which was struck down by the Supreme Court in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), because it lacked an interstate commerce nexus. Defendant argues that purely intrastate possession of crack cocaine, as is prohibited by section 844, cannot be regulated by Congress because it, too, lacks the essential interstate commerce nexus.

The power of the federal government is not absolute, but is limited to those powers enumerated in the Constitution. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *Lopez,* —— U.S. at —— ——, 115 S.Ct. at 1625–29. Under the Commerce Clause of the United States Constitution, Congress has the power "[t]o regulate Commerce ... among the several States," Art. 1, § 8, cl. 3, and "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers...." Art. 1, § 8, cl. 18.

In *Lopez,* the Supreme Court identified three broad categories of activities which

---

3. As amended in 1986, 21 U.S.C. § 844(a) provides in pertinent part as follows:

It shall be unlawful for any person knowingly or intentionally to possess a controlled substance.... [A] person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years and not more than 20 years, and fined a minimum of $1,000, if the conviction is a first conviction under this subsection and the amount of the mixture or substance exceeds 5 grams,....

Congress is authorized to regulate under the Commerce Clause: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities which have a "substantial relation to interstate commerce ... i.e., those activities that substantially affect interstate commerce." *Lopez,* — U.S. at — – —, 115 S.Ct. at 1629–30.

In *Lopez,* — U.S. —, 115 S.Ct. 1624, the Court considered a challenge to 18 U.S.C. § 922(q), which prohibited possession of a firearm within 1,000 feet of a school. Although the majority opinion acknowledged that the Court has repeatedly "upheld a wide variety of congressional Acts regulating intrastate economic activity where ... the activity substantially affect[s] interstate commerce," the Court expressed a commitment to requiring that the effect on interstate commerce be "substantial,"[4] rather than tenuous. *Id.* at —, 115 S.Ct. at 1630. The Court struck down 18 U.S.C. § 922(q) as unconstitutional because it has "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at — – —, 115 S.Ct. at 1630–31. The Court stated, "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at —, 115 S.Ct. at 1631. "Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* It was seemingly critical to the Court's conclusion that section 922(q) lacked an interstate commerce jurisdictional element "which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* In addition, there was insufficient legislative history to establish a substantial interstate commerce connection. *Id.*

Courts have considered numerous challenges to wholly intrastate activities since *Lopez,* and have upheld the constitutionality of the challenged statute in almost every instance. *See, e.g., United States v. Wall,* 92 F.3d 1444, 1449 (6th Cir.1996) (upholding federal gambling statute, 18 U.S.C. § 1955) (citing numerous Commerce Clause challenges since *Lopez,* all of which have failed); *United States v. Bolton,* 68 F.3d 396 (10th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996) (upholding the Hobbs Act, 18 U.S.C. § 1951); *United States v. Carolina,* 61 F.3d 917 (10th Cir. 1995) (upholding federal carjacking statute, 18 U.S.C. § 2119); *United States v. Wilks,* 58 F.3d 1518, 1520–21 (10th Cir.1995) (upholding regulations on machineguns, 18 U.S.C. § 922(*o*)); *United States v. Garcia–Salazar,* 891 F.Supp. 568, 572 (D.Kan.1995) (upholding the "Drug–Free School Zones Act," 21 U.S.C. § 860).

In *United States v. Fowler,* 879 F.Supp. 575, 576–77 (E.D.Va.1995) (pre-*Lopez*), the court considered the constitutionality of section 844. Looking primarily to *United States v. Atkinson,* 513 F.2d 38 (4th Cir.1975) (upholding federal regulation of intrastate possession of heroin), the *Fowler* court held that Congress has the power to regulate intrastate possession of cocaine base, a Schedule II narcotic controlled substance as is listed in 21 U.S.C. § 812(c)(II)(a)(4). Congress has found that "intrastate possession, distribution and sale of drugs ... directly and injuriously effect[ ] the introduction of them into other States to the injury of the public health and welfare." *Fowler,* 879 F.Supp. at 577 (quoting *Atkinson,* 513 F.2d at 40). This rationale is equally true after *Lopez.*

In *United States v. Wilks,* 58 F.3d 1518, 1521 (10th Cir.1995) (post-*Lopez*), the Tenth Circuit cited *Atkinson* with approval in upholding the constitutionality of 18 U.S.C. § 922(*o*), which regulates machineguns. The court held that wholly intrastate possession of machineguns can be regulated by Congress because machineguns are "things in interstate commerce." *Id.* at 1521. Like the

---

4. *See* Deborah Jones Merritt, *Reflections on United States v. Lopez,* 94 Mich.L.Rev. 674, 676–82 (1995) for an enlightening discussion of the qualitative nature of the majority's use of "substantial."

machineguns at issue in *Wilks,* crack cocaine is a "thing" which by its nature is a "commodity ... transferred across state lines for profit."

In *United States v. Garcia–Salazar,* 891 F.Supp. 568, 572 (D.Kan.1995), this court recently upheld the constitutionality of 21 U.S.C. § 860 (the "Drug–Free School Zones Act"). The court distinguished *Lopez* in that drug trafficking is inherently commercial in nature and clearly implicates interstate commerce. *Id.* Admittedly, the instant case does not involve distribution of controlled substances, as was present in *Garcia–Salazar.* Nevertheless, Congressional findings supporting the regulation of controlled substances generally also support the regulation of intrastate possession of crack cocaine in section 844.

A brief summary of the history of federal regulation of cocaine possession and section 844 may prove useful at this juncture. When Congress enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1242 (codified as amended at 21 U.S.C. §§ 801, et seq. (1994)) (the "Drug Abuse Prevention and Control Act"), "crack cocaine" was not separately delineated as a controlled substance, but was generally regulated as cocaine, a controlled substance under Schedule II(a)(4).

Congress included extensive interstate commerce findings in the 1970 Act. Specifically, Congress found that regulation of the intrastate possession of controlled substances has interstate commerce connections in that it travelled in interstate commerce prior to possession and contributes "to the swelling of the interstate traffic in such substances." 21 U.S.C. § 801(3) and (4). In addition, "Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(6). These findings provide the necessary interstate commerce nexus for federal jurisdiction to regulate controlled substances. *See, e.g., Atkinson,* 513 F.2d at 39–40.

Without making additional interstate commerce findings, Congress first punished simple possession of crack cocaine differently from cocaine generally in the 1988 amend-ments to the Drug Abuse Prevention and Control Act by amending section 844 to require mandatory minimum sentences for possession of various amounts of crack cocaine. 21 U.S.C. § 844(a) (as amended November 18, 1988, Pub.L. No. 100–690, 102 Stat. 4370, 4382). For example, section 844(a) now prescribes a mandatory five-year minimum sentence for a first time possession of more than five grams of cocaine base.

Only if the interstate commerce connection of a statute is not readily apparent, do Congressional findings on the issue become important. *Lopez,* —— U.S. at —— –——, 115 S.Ct. at 1631–32. Apart from the commerce connection authorizing regulation of drugs in general, no interstate commerce nexus is readily apparent in section 844. Legislative history pertaining to the enactment of the 1988 amendment to section 844 is sparse. However, the Congressional findings in the 1970 Controlled Substances Act provide an interstate commerce basis for Congress' enacting the 1988 amendment prescribing specific punishments for crack cocaine possession.

Defendant contends that the findings in the 1970 Act may not be used to support the 1988 amendment, because the amendment, for the first time, differentiated between punishment for possession of cocaine and crack cocaine. Defendant asserts that crack cocaine is a specialized form of cocaine, which is manufactured by combining powder cocaine with sodium bicarbonate (baking soda) to create a smokeable form of cocaine. Citing 60 Fed.Reg. at 25077, defendant points out a study by the United States Sentencing Commission, which indicates that crack cocaine is generally manufactured "near the point of retail sale, using a simple conversion process." Defendant urges that the interstate commerce connection with crack cocaine is more tenuous than with cocaine and that Congress was, therefore, required to make specific interstate commerce findings (or include a jurisdictional element) to regulate crack cocaine differently than cocaine.

It is true that previous findings by Congress may not be imported where the prior Congressional enactments do not

**1386**

"speak to the subject matter" of the statute at issue. *Lopez*, —— U.S. at ——, 115 S.Ct. at 1632. However, although possession of crack cocaine had never previously been punished more severely than cocaine, crack cocaine was clearly regulated by prior enactments of laws governing controlled substances. In enacting section 844, Congress simply chose to regulate a specific controlled substance, crack cocaine, in a different manner. We reject defendant's argument that this requires new Congressional findings. If Congress is authorized to legislate in a particular area, the courts generally do not concern themselves with *how* Congress chooses to exercise its authority in a specific instance. "Once the power of Congress to regulate is established the Court will rarely question the manner in which the power is exercised." *Hodel v. Virginia Surface Mining and Reclamation Assoc., Inc.*, 452 U.S. 264, 311 n. *, 101 S.Ct. 2389, 2391 n. *, 69 L.Ed.2d 1 (1981) (Rhenquist, J. concurring).

Defendant also points to comments made during a House committee meeting on the 1988 amendment, which he interprets to state that the amendment to section 844(a) was only intended to reach drug "dealers," but not mere drug "users." *See* 134 Cong. Rec. 24274–76. These confusing references to "dealers" and "users" do not conclusively establish defendant's point. Indeed, reading the comments in context, it appears from the committee record that the Congressmen were referring to a "dealer" as any person with more than five grams of crack cocaine in his or her possession. In any event, we are not persuaded by this small piece of legislative history that Congress intended to limit the application of section 844(a) (as amended) to "drug dealers," but not "users," who were in possession of more than five grams of crack cocaine. The language of section 844 indicates that Congress did not intend the narrow application urged by defendant. Rather, section 844 was meant to apply to anyone in possession of crack cocaine, and specifically addresses first-time offenders who possess more than five grams of crack cocaine.

The *Lopez* decision does not mandate that this court find section 844(a) unconstitutional.

Although like section 922(q), section 844(a) does not contain a jurisdictional interstate commerce element, the two statutes are readily distinguishable. Unlike gun regulations, all drug trafficking offenses, intrastate and interstate, have been held "properly subject to federal regulation on the basis of detailed Congressional findings that such was necessary to regulate interstate trafficking." *United States v. Lopez*, 2 F.3d 1342, 1367 n. 50 (5th Cir.1993). The general proscription by Congress on possession of narcotics is "a necessary means to regulate the interstate commercial trafficking in narcotics." *Id.* at 1367 n. 51. Congress has generally outlawed possession of narcotics, which are fungible and untraceable, but has not similarly generally outlawed possession of firearms. *Id.*

It follows that Congress is authorized under the Commerce Clause to regulate intrastate possession of controlled substances as a part of its regulation of interstate drug trafficking, which it has found to be harmful to the health and welfare of the public. We, therefore, conclude that section 844 is constitutional as a permissible exercise of the authority granted to Congress under the Commerce Clause.

For all the reasons discussed, the files and records in this case conclusively show that defendant is entitled to no relief; thus, an evidentiary hearing is not necessary. *United States v. Evans*, 51 F.3d 287, 1995 WL 139420 at *1, (10th Cir. March 31, 1995) (citing *Machibroda v. United States*, 368 U.S. 487, 494, 494–95, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962)).

IT IS THEREFORE ORDERED that defendant's motion to vacate, set aside, or correct his sentence (Doc. # 60) is denied.

The clerk is directed to forward a copy of this order to defendant and the office of the United States Attorney.